IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANNING JONES,<br><br>    Plaintiff,<br><br> v.<br><br>WARREN HAVENS,<br><br>    Defendant. | Case No.: C-12-01606 JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO STRIKE** |

## I. INRODUCTION

This action arises out of a business dispute between Plaintiff Channing Jones and Defendant Warren Havens. Defendant removed this case from state to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. Presently before the Court are Plaintiff's Motion for Remand ("Motion for Remand") and Defendant's Motion to Strike Plaintiff's Reply ("Motion to Strike"). The Court finds that the Motions are suitable for determination without oral argument pursuant to Civil Local Rule 7–1(b). Accordingly, the hearing on the Motion set for June 22, 2012 at 9:30 a.m. is VACATED.

For the reasons stated below, the Court GRANTS Plaintiff's Motion for Remand and DENIES Defendant's Motion to Strike.[1]

## II. BACKGROUND

### A. The Complaint

On October 6, 2011, Plaintiff filed a complaint in Alameda County Superior Court alleging various fraud claims. Complaint at *4. Plaintiff alleges that he invested heavily in Defendant's limited liability companies ("LLCs") but, due to Defendant's fraudulent conduct, Plaintiff's interest in the companies has been substantially diluted and reduced. *Id.* at *7. The business venture run through the LLCs was designed for the purchase, management, and sale of telecommunications spectrum under license from the Federal Communications Commission ("FCC"). *Id.* at *6. Plaintiff alleges, *inter alia*, that Defendant "transferred interests in [LLCs] in which [P]laintiff had substantial interests to other [LLCs] in which Plaintiff had little or no interest thereby substantially diluting Plaintiff's interests and lessening the share of any profits to which Plaintiff would be entitled." *Id.* The Complaint alleges damages due to Plaintiff having "not received the shares to which he was entitled of proceeds of sales or leases of spectrum controlled by [LLCs] managed by Defendant in which Plaintiff has invested and the interest in such [LLCs] to which Plaintiff is entitled based on his investments in an amount in excess of $41,000,000." *Id.* at *7.

### B. Defendant's Notice of Removal

On March 30, 2012, Defendant removed this action to the United States District Court for the Northern District of California, asserting that a March 26, 2012 filing by Plaintiff established grounds for removal. Notice of Removal ¶ 3. Specifically, Plaintiff's Case Management Conference Statement (the "CMC Statement") attaches Plaintiff's Demand for Arbitration and states that the relief sought in the state court action is described in that document. *Id.* at ¶¶ 3-4 (citing CMC Statement ¶ 4(b)). Defendant asserts that the Demand for Arbitration seeks a declaration of Plaintiff's alleged rights to FCC licenses held by Defendant's LLCs, and an order compelling the transfer to Plaintiff of certain FCC licenses held by Defendant's LLCs. From the CMC Statement,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

1 Defendant contends he "first ascertained that the State Court Action asserts control over, challenges, 2 and seeks transfer of one or more FCC licenses, and therefore is subject to the exclusive jurisdiction 3 of the FCC and the federal courts." *Id.* at ¶¶ 6, 10 (citing 47 U.S.C. §§ 151, 201 & 301 *et seq.*).

### C. The Motion for Remand

On April 25, 2012, Plaintiff filed his Motion in which he argues that Defendant's removal was both untimely and substantively deficient. Motion for Remand, 1. Regarding timeliness, Plaintiff contends that any FCC issue that exists in this case was revealed in his Complaint. *Id.* at 5. The 30-day time limit to remove the case began upon filing the Complaint, rendering the removal untimely, and mandating remand. *Id.*

Plaintiff also contends that subject matter jurisdiction is lacking because the issues in this case do not give rise to a federal question. *Id.* Plaintiff states that his claims are state law claims "arising out of a business dispute with the [D]efendant that happens to involve FCC licenses as the business' primary assets. . . . Plaintiff is seeking to recover his due from investments in a business venture that bought and sold FCC licenses." *Id.* at 6. Plaintiff denies that he is seeking to challenge any determination by the FCC or seeking relief for the improper awarding of FCC licenses. *Id.* at 7. Additionally, Plaintiff argues that federal jurisdiction is not established simply because the FCC regulates spectrum licenses and those licenses are involved in this business dispute. *Id.* (citing *Fair v. Sprint Payphone Servs.*, 148 F. Supp. 2d 622, 625-26 (D.S.C. 2001)).[2]

In response, Defendant rejects Plaintiff's contention that the Complaint adequately revealed all the FCC license issues in this action, thus making removal untimely. Defendant's Opposition to Plaintff's Motion for Remand ("Opposition"), 1-5. Defendant asserts that Plaintiff's Demand for Arbitration alleges for the first time that, contrary to the formal applications filed with the FCC, Plaintiff's "'real' ownership in the LLCs involved was and is, all along, different from that represented to the FCC when the licenses were sought, and that the real party in interest is not the LLCs but an 'enterprise' or 'venture' between Jones and Havens of which Jones is a 'partner.'" Opposition at 2. Defendant contends that this "effectively challenges the FCC license grants" and is

---

[2] Plaintiff also requests an award of fees and costs incurred as a result of the removal. *Id.* at 8.

grounds for removal. *Id.* Additionally, Plaintiff's forms of relief sought in connection with the state court action—detailed in the Demand for Arbitration and referenced in his CMC Statement—are:

> 1. For a declaration establishing Claimant's interest in the assets obtained by Respondent with funds Claimant provided to Respondent, and any assets traceable to such funds, including any FCC Licenses . . . and Respondent's interest if any in such assets and FCC Licenses;
>
> . . .
>
> 4. For a constructive trust compelling Respondent to transfer to Claimant the FCC Licenses obtained with the use of Claimant's funds or traceable to such funds.

*Id.* (quoting Plaintiff's Demand for Arbitration, 8). Defendant asserts that this makes it clear that Plaintiff is seeking transfer of the FCC licenses, which was not apparent in the Complaint. *Id.*

Defendant also argues that removal was substantively proper because federal subject matter jurisdiction exists for two reasons: 1) Plaintiff's claims are completely preempted; and 2) the claims depend on a substantial question of federal law. *Id.* at 6. Regarding complete preemption, Defendant argues that because Plaintiff's claims and remedies "involve" entry into the market they are preempted by 47 U.S.C. § 332(c)(3)(A). *Id.* (citing, *inter alia*, *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983 (7th Cir. 2000); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010)). Defendant also claims that the FCC has "exclusive jurisdiction" over approval of ownership of its licenses, which require disclosures "as to the ownership of the entity and control over such entity." *Id.* at 9. Defendant argues Plaintiff's claims are preempted because he seeks to define the ownership interest in the licenses outside of the FCC procedures. *Id.* Regarding a substantial question of federal law, Defendant argues that seeking to transfer ownership of FCC licenses, and claiming a majority interest in the LLCs which bid on the licenses, are substantial federal questions. *Id.* at 11-12 (citing *Am. Bird Conservancy v. FCC*, 545 F.3d 1190 (9th Cir. 2008)).[3]

In his reply, Plaintiff states that he does not "challenge the FCC's grant of the licenses to the LLCs or seek to transfer ownership of the licenses." Plaintiff's Reply in Support of Motion to

---

[3] Defendant also argues that because at least one of the LLCs is a "maritime service company" holding maritime licenses, this action should be governed by federal maritime law.

4

Remand ("Reply"), 4. Plaintiff further states that "[t]o the extent that the arbitration claim refers imprecisely to transferring the licenses themselves, rather than establishing the ownership of the LLCs to reflect Mr. Jones's investments, its language can readily be amended as the arbitration claim has not advanced beyond preliminary stages." *Id.* at 4 n.1. Plaintiff also argues, *inter alia*, that there is no preemption, complete or otherwise, because such preemption is not provided in the FCC statute cited by Defendant and because Plaintiff's relief does not include transferring ownership of FCC licenses. Rather, Plaintiff seeks money damages from proceeds of sale of spectrum, and he seeks to adjust his ownership interest in the LLCs in a manner commensurate with his investment. *Id.* at 7.

## III. ANALYSIS

### A. Legal Standard Governing Removal

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Original jurisdiction may be based on diversity or the existence of a federal question, as set forth in 28 U.S.C. §§ 1331 and 1332. Subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), based on diversity, requires complete diversity of citizenship and an amount in controversy in excess of $75,000. Subject matter jurisdiction under 28 U.S.C. § 1331, based on the existence of a federal question, requires a civil action to arise under the constitution, laws, or treaties of the United States. "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citation omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*

Removal pursuant to 28 U.S.C. § 1441 is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This rule makes the plaintiff the master of its claim in that the plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *Id.* Further, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.*

There is, however, a corollary to the well-pleaded complaint rule, known as the "artful pleading doctrine." *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). The doctrine provides that "'[a]lthough the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim.'" *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1389 (9th Cir. 1989) (quoting *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 860 (9th Cir. 1987)). "Under the artful pleading doctrine, 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *Lippitt*, 340 F.3d at 1041 (quoting *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983)). The doctrine allows courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's state-law claim as a federal claim." *Precision Pay Phones v. Qwest Commc'ns Corp.*, 210 F. Supp. 2d 1106, 1112–13 (N.D. Cal. 2002) (Chen, J.). However, the doctrine is to be invoked "only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1427 (9th Cir. 1984). Courts have used the artful pleading doctrine in: 1) complete preemption cases, and 2) substantial federal question cases. *See Lippitt*, 340 F.3d at 1041.

### B. Whether Removal was Timely

#### 1. Background Law

The time periods for removal of a state court action to federal court are set forth in 28 U.S.C. § 1446(b), which provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). In other words, there are "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading [hereinafter, "the first thirty-day window"] or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable [hereinafter, "the second thirty-day window]."'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005) (quoting 28 U.S.C. § 1446(b)).

### 2. Application of Law to Facts

The parties dispute whether the Demand for Arbitration attached to Plaintiff's CMC Statement revealed new information, not present in the Complaint, from which it may first be ascertained that the case is one which is or has become removable. The Court finds that the Demand for Arbitration revealed for the first time that Plaintiff sought particular remedies that, according to Defendant, made the case removable; namely, Plaintiff's request to seek a proprietary transfer of the FCC licenses and a declaration of his ownership interest in the LLCs.

Although Plaintiff clarified in his Reply that he is not now seeking transfer of the FCC licenses, the Demand for Arbitration plainly states that such a remedy was sought by Plaintiff at the time. Additionally, the Demand for Arbitration also seeks declaratory relief pertaining to Plaintiff's ownership interest in the LLCs. This was also not sought in the Complaint. Although the Complaint alleges that Plaintiff's current ownership interest in the LLCs is not accurate, and that he has been

damaged by Defendant's conduct in reducing his ownership interest, the Complaint seeks only money damages in connection with these allegations. Defendant, however, bases removal, in part, on Plaintiff's attempt to adjust the ownership interest in the LLCs, which Defendant was unaware of until he received the CMC Statement. Removal is not based on his claim for money damages. Thus, because Defendant removed within the second thirty-day window following receipt of the CMC Statement, removal was not procedurally defective.

### C. Whether Federal Subject Matter Jurisdiction Exists

The parties here are not of diverse citizenship, and the face of Plaintiff's Complaint raises only state law claims. Thus, the only plausible basis for removal is jurisdiction based on complete preemption or the presence of a substantial federal question. The Court addresses both possible bases in turn.

The Court, however, will not address Defendant's arguments regarding federal subject matter jurisdiction to the extent they are based on Plaintiff's earlier request to have Defendant's FCC licenses transferred to Plaintiff. Even if the Court would have had jurisdiction over Plaintiff's claims that sought such relief, Plaintiff has clearly dropped his pursuit of these claims, and they are therefore no longer a part of this case. *See* Reply at 4 n.1.

#### 1. Complete Preemption

##### a. Background Law

The complete preemption doctrine applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); *see Franchise Tax Bd.*, 463 U.S. at 22 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."); *see also Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008) ("Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim.") (emphasis original).

The Supreme Court has applied the doctrine in only three contexts: labor contracts under the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968); claims for benefits from plans regulated by ERISA, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987); and usury claims against federally chartered banks, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003). In *Beneficial*, the Supreme Court clarified when removal was proper under complete preemption:

> In the two categories of cases where this Court has found complete preemption-certain causes of action under LMRA and ERISA-*the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action*.

*Id.* at 8 (emphasis added); *see also Lippitt*, 340 F.3d at 1042 (quoting same).

### b. Application of Law to Facts

Defendant argues that 47 U.S.C. § 332(c)(3)(A) completely preempts Plaintiff's state law fraud claims. The statute reads in relevant part:

(3) State Preemption

(A) Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services. Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates.

47 U.S.C. § 332(c)(3)(A). This statute has two prongs: a "rate" prong and a "market entry" prong. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010). Defendant argues that Plaintiff's claims are completely preempted under the "market entry" prong because he seeks market entry "by getting an assignment of the licenses (and in essence challenging the award of the licenses)." Opposition at 9 (citing *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000) (finding complete preemption where plaintiff's contract claims challenged market entry and rates)).

9

Plaintiff's claims do not fall under the "market entry" prong. In the context of a state tort action, the Ninth Circuit defined the "market entry" prong as follows:

> Just as § 332(c)(3)(A) preempts claims that require a court to substitute its judgment for the agency's with respect to the reasonableness of a particular rate, § 332(c)(3)(A) also preempts claims that require a court to substitute its judgment for the agency's with regard to a market-entry decision. In other words, § 332(c)(3)(A) preempts a state tort action that would require a court to engage in an assessment or reexamination of the FCC's regulatory determination regarding a mobile service's entry into the market.

*Telesaurus*, 623 F.3d at 1008. There, the court found that plaintiff's tort claim essentially asked the court to find that defendant's use of spectrum was "wrongful" or "unlawful" under its FCC license. *Id.* at 1010. The court held that such a claim would effectively require a reexamination of the FCC's exclusive authority to control licensing decisions, and therefore the claim fell under the "market entry" prong. *Id.*

Defendant has cited no authority for the proposition that Plaintiff's potential change in ownership interest in the LLCs comes within § 332(c)(3)(A)'s "market entry" prong. His fraud claims do not require an assessment or reexamination of an FCC regulatory determination, including the LLCs' original award of the licenses. To be sure, the FCC does regulate the transfer of FCC licenses and the transfer of control of the corporations holding those licenses, pursuant to 47 U.S.C. § 310(d). That subsection reads as follows:

> No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, *voluntarily or involuntarily*, directly or indirectly, *or by transfer of control of any corporation holding such permit or license*, to any person *except upon application to the Commission* and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby. Any such application shall be disposed of as if the proposed transferee or assignee were making application under section 308 of this title for the permit or license in question; but in acting thereon the Commission may not consider whether the public interest, convenience, and necessity might be served by the transfer, assignment, or disposal of the permit or license to a person other than the proposed transferee or assignee.

47 U.S.C. § 310(d) (emphasis added). But Plaintiff does not challenge an application to the Commission to change ownership or control of FCC licenses. Rather, Plaintiff's fraud claims allege

1   that Defendant has misrepresented Plaintiff's interest in the LLCs and has wrongfully induced
2   Plaintiff into investing in the LLCs.
3         That Plaintiff's requested relief includes a declaration of his interest in the LLCs does not
4   require a court to substitute its judgment for the agency's. As an initial matter, it is not clear that
5   Plaintiff claims an interest in the LLCs such that he would be the controlling owner of the companies
6   if his requested relief is granted. Nor is it apparent that Plaintiff otherwise seeks transfer of control
7   of the LLCs. Because section 310(d) plainly states that an application need only be filed to the FCC
8   when transferring control of any corporation holding FCC licenses, it therefore may be entirely
9   unnecessary for the FCC to play any role whatsoever in this dispute. However, even if such a
10  transfer of control would result from Plaintiff's requested relief, that transfer would be wholly
11  contingent on FCC approval—a familiar process recognized by the FCC. The FCC has approved
12  courts issuing remedial orders in private disputes that would only become effective upon a
13  successful involuntary transfer application under section 310(d). *See In re: Arecibo Radio Corp.*,
14  101 F.C.C. 2d 545 (1985) (holding that it was not a violation of FCC policy for a court to order
15  licensees to petition the FCC for a transfer of licenses or, if they would not, have the Marshal apply
16  for the transfer in the licensees' names). The FCC has consistently stated in the section 310(d)
17  context that

> [t]he Commission's long-standing policy is to accommodate the actions of state courts, thereby avoiding conflicts between state and federal authority, unless a public interest determination under the Act would compel a different result. Indeed, the U.S. Supreme Court has stated that "the principle of fair accommodation between State and Federal authority . . . should be observed" if the state's laws "can be effectively respected while at the same time reasonable opportunity is afforded for the protection of that public interest" which underlies licensing decisions. The Commission thus defers to judicial determinations in many areas, including bankruptcy matters, private disputes, and the interpretation and enforcement of contracts for the sale of a broadcast station. The Commission, however, retains exclusive authority to license broadcast stations, and when a state court's decision is contrary to Commission policy, the Commission is neither bound by the state court order nor need take action to allow the order to be carried out.

*In re: Rivera Radio Co., Inc.*, 2012 WL 1995950 (F.C.C. Jun. 4, 2012) (quoting *Radio Station WOW v. Johnson*, 326 U.S. 120, 132 (1945); citing *In re: Arecibo Radio Corp.*, 101 F.C.C. at 549); *see*

*also In re: Gresham Commc'ns, Inc.*, 2011 WL 3792847, at *4 (F.C.C. Aug. 25, 2011); *Phoenix Leasing Inc. v. Sure Broad., Inc.*, 89 F.3d 846, at *2 (9th Cir. 1996) (approving, in an unpublished decision, the district court's order directing the receiver to apply for an involuntary transfer of licenses with the FCC following resolution of a private contract dispute).

Because the FCC procedures and requirements laid out in section 310(d) are separate and subsequent to court proceedings that may result in the involuntary transfer of control of the LLCs, determination of Plaintiff's fraud claims do not constitute "market entry." *See Telesaurus*, 623 F.3d at 1008.

## 2. Substantial Federal Question

### a. Background Law

In addition to complete preemption, the artful pleading doctrine allows federal courts to retain jurisdiction over state law claims that implicate a substantial federal question. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "A state cause of action invokes federal question jurisdiction only if it 'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674 (9th Cir. 2012) (quoting *Grable & Sons*, 545 U.S. at 314). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons*, 545 U.S. at 312. "This type of federal question jurisdiction applies to a 'special and small category' of cases." *Nevada*, 672 F.3d at 674 (quoting *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699 (2006)).

### b. Application of Law to Facts

Plaintiff's fraud claims do not "necessarily raise a . . . substantial" issue of federal law. *Grabble & Sons*, 545 U.S. at 314. Defendant's reliance on *American Bird Conservancy v. FCC*, 545 F.3d 1190 (9th Cir. 2008) is premised on the mistaken belief that Plaintiff's claims challenge the granting of the licenses. Because Plaintiff's claims are not artfully pled so as to avoid challenging

FCC orders through the proper administrative procedures, the Court finds that the holding of *American Bird* does not apply.

Although the regulation of ownership and control of FCC licenses and the companies that hold them is an important federal task, the Court does not find that Plaintiff's fraud claims raise a substantial question of federal law conferring federal subject matter jurisdiction. As discussed above, ultimate authority to decide if ownership or control will change remains with the FCC. Thus, the resolution of this question, if it needs to be decided, will comport with the "congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*, 545 U.S. at 314.

Faced with a similar situation, the court in *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481 (S.D.N.Y. 2008), remanded a case where the plaintiff sought defendant's assets, which included companies holding FCC licenses, as damages for defendant's breach of contract. *Id.* at 488. The court found that federal subject matter was not present since the core of plaintiff's claims was comprised solely of state law questions; the need to seek FCC approval of Plaintiff's remedies was not enough to avoid remand. *Id.* ("Although determining the appropriate relief to which plaintiff is entitled—should plaintiff succeed in its action—may require some interpretation of the Communications Act and will involve seeking the approval of the FCC, it is still the contracts, and not federal law, that the plaintiff seeks to have enforced.") (internal quotations omitted). The same is true here. Plaintiff's claims do not ask the state court to enforce federal law and instead raise state law issues of liability. The final decision on any transfer of control of the LLCs is left to the FCC. Accordingly, no substantial federal question exists upon which removal may be based.[4]

### D. Whether Fees and Costs Should be Awarded

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that, "[a]bsent unusual circumstances, courts may

---

[4] Defendant's argument that federal jurisdiction exists because the FCC licenses owned by at least one of the LLCs are commercial maritime licenses, and therefore governed by federal maritime law, is rejected by the Court. *See* Opposition at 12. Defendant's argument is conclusory and not supported by any relevant authority. Moreover, the Court fails to see how Plaintiff's claims would fall under federal maritime jurisdiction.

13

award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The *Martin* Court explained that "district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.* In *Lussier v. Dollar Tree Stores, Inc.*, the Ninth Circuit cautioned that "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." 518 F.3d 1062, 1065 (9th Cir. 2008). Rather, the objective reasonableness of the removal depends on the clarity of the applicable law and whether such law "clearly foreclosed" the defendant's arguments for removal. *Id.* at 1066–67.

Plaintiff requests fees and costs incurred as the result of removal. The Court DENIES Plaintiff's request in light of the complexity of the FCC and complete preemption issues.

### E. Whether the Court Should Strike Plaintiff's Reply as Untimely

Defendant moves to strike Plaintiff's Reply on the basis that the pleading was filed two days late and therefore untimely. Apparently, the parties agreed to a two-day extension of the filing date for the Reply, but Plaintiff did not present a stipulation reflecting the change in briefing schedule to the Court. Because Defendant does not claim he was prejudiced in any way by the late filing to which he agreed and because the Court finds the Reply pertinent to the outcome of the Motion to Remand, Defendant's Motion to Strike is DENIED.

## IV. CONCLUSION

For the reasons stated, the Court GRANTS Plaintiff's Motion for Remand, and DENIES Defendant's Motion to Strike. Accordingly, the Court REMANDS the case to state court.

IT IS SO ORDERED.

Dated: June 19, 2012

_____

JOSEPH C. SPERO

United States Magistrate Judge